# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5912 | **DATE** | 12/20/2001 |
| **CASE TITLE** | David G. Saptya, et al. vs. Riccardo F. Ginex, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Ginex's motion (Doc. No. 4-1) is denied. Defendant Ginex is directed to answer within 21 days. Status conference is set for January 22, 2002 at 9:30 a.m. Parties are directed to be prepared to propose a discovery schedule.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | DEC 21 2001 date docketed | |
| ✓ | Notices mailed by judge's staff. | | | 11 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 12/20/2001 date mailed notice | |
| ETV | courtroom deputy's initials | 01 DEC 20 PM 3:47 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 21 2001

DAVID G. SAPTYA and )
LYNN M. SAPYTA, )
 )
Plaintiff, )
 )
v. ) No. 01 C 5912
 )
RICCARDO F. GINEX, in his ) Judge Rebecca R. Pallmeyer
individual capacity, and the )
VILLAGE OF DOWNERS GROVE, )
an Illinois municipal corporation, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs David and Lynn Saptya bring this § 1983 action against the Village of Downers Grove ("the Village") and Village Police Chief Riccardo Ginex ("Ginex") in his individual capacity. Plaintiffs allege that Defendants violated the Fourteenth Amendment by searching Plaintiffs' home without a warrant or probable cause and by seizing Plaintiffs' personal property. Plaintiffs also allege that under Illinois law, the Village has unlawfully converted Plaintiffs' personal property. Defendant Ginex now moves to dismiss, claiming qualified immunity for his actions. For the reasons set forth below, Defendant's motion is denied.

## FACTUAL BACKGROUND

Plaintiffs, a husband and wife, jointly own and occupy a single-family residence ("the house") at 1114 Maple Avenue in Downers Grove, Illinois. (Complaint ¶¶ 3, 5.) On January 12, 2001, the Village police received a phone call from Dr. Mumtaz F.

11

Raza, who was then Plaintiff David Sapyta's psychiatrist. (*Id.* ¶¶ 6-7.) After receiving this call, the police officers went to the house, directed Plaintiff David Sapyta to step outside, and took him into custody upon suspicion that he had a mental illness and posed a reasonable threat to inflict serious physical harm upon himself because of his illness. (*Id.* ¶¶ 7-8.) While being taken into custody, Mr. Sapyta told the police that he did not want anyone going into the house, and Village police officer Scalzetti assured him that no one would do so. (*Id.* ¶ 9.) Soon after Mr. Saptya was removed from the scene (the complaint does not state where he was taken), Village police officers searched the house under the orders and direction of Defendant Ginex, who was present at the scene. (*Id.* ¶ 10.) This search was carried out without a warrant. (*Id.* ¶ 12.) During the search, Village police took possession of a collection of "Liberty Walking Half Dollars" in an antique wooden cheese box; a diamond ring with a gold wedding band; approximately nine guns and rifles with cases; a can of live shotgun and rifle ammunition; a wide-angle rifle scope; three knives, including one with a seven-inch blade; a bow and bow case; and nine arrows. (*Id.* ¶ 17; 1/12/01 Downers Grove Police Property Control Form, Ex. A to Compl.) These items belonged to the Plaintiffs, either jointly or individually. (Compl. ¶ 17.) Despite requests from Plaintiffs, the Village police have not returned any of the seized items. (*Id.* ¶ 18.) Plaintiffs filed the complaint initiating this action on August 1, 2001.

2

# DISCUSSION

## A. Standard for a Motion to Dismiss

A motion to dismiss a complaint pursuant to FED. R. CIV. P. 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead tests whether the claimant has properly stated a claim. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In deciding a motion to dismiss, the court will consider all well-pleaded allegations of the complaint as true, and will draw all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). Dismissal is only proper if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

## B. Qualified Immunity

In their complaint, Plaintiffs allege constitutional violations by Defendants Village and Ginex. Defendant Ginex argues that the claims against him are barred by the doctrine of qualified immunity. Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To

evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether Plaintiff's claim states a violation of his constitutional rights. Then, the court determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. Sch. Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997). Only if the rights were clearly established may the official be liable for monetary damages. *See Wilson*, 526 U.S. at 609.

A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Because there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a plaintiff need not point to cases that are identical to the presently alleged violation." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). Nevertheless, an official will not be individually liable unless "the contours of the right . . . have been established so that the unlawfulness of the defendant's conduct would have been apparent in light of existing law." *Id.*, citing *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989), *cert denied*, 498 U.S. 949 (1990).

C.  **Search and Seizure**

The court turns to the question of whether Defendant Ginex's alleged conduct constitutes a violation of Plaintiffs' constitutional rights. It is well-settled law that the Fourth Amendment generally prohibits the warrantless search of a person's home.

4

*Kyllo v. United States*, 121 S. Ct. 2038, 2041 (2001); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Such searches are constitutionally permissible, however, when there is probable cause and exigent circumstances create a compelling need for official action and insufficient time to secure a warrant. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). The Supreme Court has noted that exigent circumstances justifying a warrantless search exist when (a) officers are in hot pursuit of a fleeing felon; (b) destruction of evidence is imminent; (c) officers need to prevent a suspect's escape; or (d) there is a risk of danger to officers or others inside or outside of the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

The court concludes that on the pleadings before it, there were not exigent circumstances to justify the warrantless search of Plaintiffs' home. The warning that Dr. Raza gave the Village police apparently suggested that Mr. Sapyta was a potential threat to himself. It follows logically, then, that once Mr. Sapyta was taken into custody, the police were not confronted with a situation in which either they, the public, or evidence were put at risk. This is not a case, for example, involving or requiring a protective sweep. *See generally Maryland v. Buie*, 494 US 325, 327 (1990). The police certainly would have had time to secure the premises, obtain a search warrant, or seek consent for a search from Ms. Sapyta before entering Plaintiffs' home. *Cf. United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (no exigent circumstances where police rescued kidnap victim from kidnapper's apartment but had time to secure premises and secure search warrant). On the facts before the court, the warrantless search constituted a constitutional violation.

With regard to the police department's seizure of Plaintiff's possessions, it is clearly established law that "a seizure of property occurs when there is meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The physical removal and ongoing retention of a citizen's property implicates the Fourth Amendment. *Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000) ("physical removal and retention" of firearms by police implicated Fourth Amendment seizure concerns). Moreover, it is settled law that even warrantless searches stemming from exigent circumstances must be "strictly circumscribed by the exigencies which justify [their] initiation." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (no exigent circumstances when all inhabitants of apartment were located prior to search). The alleged removal and retention of Plaintiffs' personal property can not be justified under these principles.

Having concluded that Plaintiffs have stated cognizable claims for both the warrantless search of their property and the ensuing seizure of their property, the court must now determine whether a reasonable police officer could have believed that a warrantless search and seizure of the guns and other items was permissible on January 12, 2001 in light of the potential threat that Mr. Sapyta posed to himself. As noted above, the presumption against warrantless searches of homes is powerful and well-known. On the facts before the court, no reasonable officer would have engaged in such a search unless he believed that there were exigent circumstances excusing the search. The officers on the scene, including Defendant Ginex, knew that Mr. Sapyta had been taken away into protective custody for an undetermined period. The Village

police had no reason to suspect any threats to themselves or the public health until Mr. Sapyta returned home. There was a possibility that Mr. Sapyta would be detained, medicated, or both. A reasonable officer on the scene would undoubtedly have worried that Mr. Sapyta would return before a warrant or consent to a search could be secured, but this concern could reasonably have been remedied by posting an officer at the house until a warrant had been obtained and a search conducted. Significantly, on the record before the court, Defendant and his fellow officers made no effort to obtain a warrant before searching Plaintiffs' home. *See United States v. Salava*, 978 F.2d 320, 325 (7th Cir. 1992) (noting that "there may be some value in requiring police to apply for a warrant even when exigent circumstances exist"). Without greater factual development, the court is unable to conclude that the Village police lacked time to pursue a warrant. In light of these considerations, the court concludes that the warrantless search of Plaintiffs' home was a clear violation of their constitutional rights.

Nor do the subsequent seizures withstand scrutiny. It is clear, for example, that no reasonable officer could have believed that removing Plaintiffs' coins and diamond ring was either necessary or constitutional. *Cf. Brindley v. Best*, 192 F.3d 525 (6th Cir. 1999) (qualified immunity not warranted where officers seized items beyond scope of search warrant). Similarly, even officers believing that David Sapyta constituted a threat to himself could not have justified taking possession of items such as Plaintiffs' rifle scope and bow case, neither of which Mr. Sapyta could have used to harm himself. With regard to Plaintiffs' knives, bow, arrows, ammunition and guns, there is case law

7

clearly establishing the proposition that police may not justify a warrantless seizure of weaponry merely on the grounds that it belongs to a potentially dangerous owner. *Johnson*, 22 F.3d at 680 (disallowing warrantless emergency search for firearms in apartment rented by kidnapper who had captured fourteen-year-old girl kidnappee and had threatened to kill her and her family if she escaped). Defendant invites the court to read *United States v. Hendrix*, 595 F.2d 883 (D.C. Cir. 1979) as requiring a different result, but the case is readily distinguishable. In *Hendrix*, the D.C. Circuit upheld a warrantless search for and seizure of a suspect's sawed-off shotgun, in part because there were exigent circumstances, including the fact that the presence of the shotgun posed a threat to the suspect's wife and baby. *Id.* at 885-86. The court also specifically noted, however, that (a) the suspect's wife, who had joint custody over the searched apartment, consented to the search; (b) there was a threat of imminent removal or destruction of the shotgun; (c) the shotgun was criminal contraband; (d) the searching officers were informed on the scene that the suspect was in possession of criminal contraband; (e) the suspect had already fired the shotgun that night; and (f) the searching officers were aware of the suspect's prior criminal conduct with firearms. *Id.* at 885-86. None of these factors applies to the case at hand. In light of the strong presumption against warrantless domestic searches and seizures, the fact that the Defendant knew Mr. Sapyta was being taken into protective custody, the absence of any suggestion that Mr. Sapyta posed a threat to anyone but himself, the fact that the alleged seizures appear to extend beyond the scope of what even a search warrant would contemplate, and the possibility of pursuing other measures ranging from

8

contacting Mrs. Sapyta to obtaining a search warrant, the court concludes that Defendant is not entitled to qualified immunity.

Defendant argues further that the ongoing retention of Plaintiffs' firearms poses no constitutional problem because the Illinois Firearm Owners' Identification Card Act ("The Act") provides that no person may possess a firearm in Illinois without possession of a Firearm Owner's Identification Card ("FOID"). (Def.'s Motion to Dismiss at 5, citing 430 ILCS 65/2(a)(1).) The Act also allows for the seizure and revocation of FOID cards belonging to persons who have been patients of a mental institution within the past five years or whose mental condition poses a clear and present danger to the cardholder or the community. (*Id.*, citing 430 ILCS 65/8(e) and (f).) Defendant contends that he warrants qualified immunity because Plaintiffs have not alleged that Mr. Sapyta has a valid FOID. For purposes of this motion to dismiss, however, the court will infer from Plaintiffs' gun ownership and the silence on this point in the parties' pleadings that either one or both of the Plaintiffs had a valid FOID on January 12, 2001 and has one at the present time. Under the facts as alleged, the court concludes that no reasonable officer would have taken permanent possession of Mr. Sapyta's firearms without at least determining whether he was legally authorized to possess them. To take possession of the firearms without such a determination would render the FOID requirement useless altogether. In any event, even if Mr. Sapyta lacked a valid FOID card, a reasonable officer would not retain Plaintiff's other items, ranging from coins to bows and knives.

## CONCLUSION

For the reasons set out above, Defendant Ginex's motion (Doc. No. 4-1) is denied. Defendant Ginex is directed to answer within 21 days. Status conference is set for January 22, 2002 at 9:30 a.m. Parties are directed to be prepared to propose a discovery schedule.

ENTER:

Dated: December 20, 2001

REBECCA R. PALLMEYER
United States District Judge